Rachel, we'll take up our third case, United States v. Wable. Mr. Byrne, you are back on. Thank you, Your Honor. May it continue to please the Court, I am still Jonathan Byrne. I'm here now on behalf of Charles Wable, the defendant below. Mr. Wable's sentence is procedurally unreasonable for two reasons. First, there's an incorrect calculation of his guideline range due to the classification of a prior West Virginia offense as a controlled substance offense when records show that's not the case. Second, the district court failed to address Mr. Wable's non- None of those records were in the district court record. That is correct, Your Honor. I'll start with that issue. Mr. Wable was convicted of two counts, but the count that drove his guideline calculation was the count for being a felon in possession of a firearm. His base offense level under 2K2.1 was enhanced because of two prior controlled substance offenses, one of which was a conviction in Clay County, West Virginia, for what's labeled in the pre-sentence report as cultivating marijuana. There is no such offense under West Virginia law. Cultivating is a species of production, which is a species of manufacture, but there is no label for cultivating marijuana in West Virginia. Mr. Wable- If it's assumed within manufacture, what's wrong with the indictment having said cultivating? I don't think the indictment actually did say cultivating. The indictment, if you look at the records, charges manufacture under the general West Virginia drug statute. Well, cultivation is part of manufacturing by statutory definition. I don't understand your argument. The argument isn't that cultivation doesn't fall under that statute. It's that as a label for an offense, it would be the equivalent to an offense in West Virginia that's labeled third-degree murder. There is no such thing. The conduct probably falls under voluntary manslaughter, and in other states might be classified as a third-degree murder, but there is no such thing in West Virginia. And so that's what drew me to go look at the records, because I was like, there's something not right here.  Right, but in that example, there'd be no third-degree murder in West Virginia, but here the statutory definitions say what they say, and cultivation is included in those. Yes, and if the records show that he was convicted of cultivation or manufactured as cultivation, then this argument wouldn't be part of this appeal. The problem is that the records actually show he was convicted, or he was sentenced, for attempt under the general West Virginia attempt statute. And that, to return to our prior discussion... West Virginia, could you get a sentence of one to five years for attempt? I am not certain what the statutory sentence for that is, but regardless, he did in this case. I am certainly willing to concede that there's some sort of mistake that happened in 2007 in Clay County when Mr. Wavell got sentenced, and that neither party at the time had a reason to seek review to correct it. But the fact is, those are what the records show. And that's what we in federal court are left to parse out. And so, we can't really go beyond a record of conviction that says he was convicted of attempt. The commitment order says he's guilty of the felonious assault of cultivating marijuana. So, I mean, your burden here is to show clear and obvious. I mean, how can you show that this is clear and obvious? I think we can show that it is clear and obvious because, had these records been presented to the district court, it could not have found that this was a controlled substance offense. They're at best ambiguous. At worst, they clarify what he was convicted of, and it was not manufacturing a controlled substance. Well, I mean, if it's ambiguous, how could it have been clear and obvious to the district court that there would be error? It should have been clear and obvious, again, because this tag of cultivating should have raised red flags to attorneys who practice in West Virginia. And even putting that to one side, Mr. Wavell did, in a pro se pleading, say this is not a controlled substance offense. Now, he did it on a different basis. And his attorney decided not to take that up. But this was certainly not a situation where this issue just kind of slid under the radar at sentencing, and then now we're bringing it up on appeal. It seems to be unclear as to what statute, which West Virginia statute he was sentenced under. So, why would that not be clear and obvious? I think it is clear and obvious because the sentencing order says it was under the West Virginia attempt statute. Whether that makes sense in the general scheme of West Virginia law is not for this court to decide, I don't think. This may be an error in Mr. Wavell's favor. And as I said, neither party had a reason to try and clarify it or correct it. But the sort of nay plus ultra of prior convictions in federal court is that we look at what the actual, what the person actually convicted and sentenced of or for. And in this case, that is what it says. As unusual as that appears. This court had ordered some supplemental briefing on what concerns . . . I'm just saying it is clear and obvious area, but to make the determination based on additional records that the district court didn't even have. I mean, if district court didn't have it, how is it clear and obvious? My point, my position on that, Your Honor, is that this is a question that courts can resolve by taking judicial notice. We don't need additional fact-finding or anything like that. And so we can look now at the question of whether . . . We're here on direct appeal under plain error. This is not a 2255 proceeding. Correct. Where that might be a much more relevant question. I think there's . . . This could be presented as a 2255 issue, but I think the ability of this court to take judicial notice of those records would allow this court to find that there is plain error in this situation. I'm going to turn to the Fowler case, which this court ordered supplemental briefing on. There are several distinctions between this case and Fowler, such that I don't think Fowler controls. Primary ones are in Fowler, the records that the government presented on appeal in that case actually clarified that the district court did not err. And in this case, they go the opposite way. But the other thing that has changed since Fowler was decided, and I think it was Judge Benjamin who brought this up during the first argument, is the Henderson decision. Henderson not only says that district courts have an obligation to correctly calculate the guideline range, but that that obligation exists regardless of the arguments of the parties made before it. Henderson was not a plain error case. It was not, Your Honor. And the court there also said, we can't fault the district court for not addressing objections it didn't know about. It's true, Your Honor. And, of course, in this case, there was an objection. It was pro se, and it was not adopted by counsel, but it was there. And so this is a situation where I think maybe the district court should have said, you know, hold on a second. We have this thing here. Let's make sure we get this right. That's why I said it's not a situation where… Well, his objection was, you know, marijuana can't be a controlled substance. Correct. It was not… Which has nothing to do with whether or not there's some dispute about the underlying state conviction documents. I mean, if that were the rule, then you would never finish a federal sentencing proceeding. I agree, Your Honor, that Mr. Wavell's basis for the objection is not the same basis as the argument I'm making now. But nonetheless, he did highlight it. And so this isn't a situation where there was no sort of red flag to the district court that there was something here. Because I have had cases before, Henderson being one, where the district court said, hey, parties, something about this enhancement not applying or applying. I think you should brief this. I think you should take a look at this. And I think in a situation like this where you have Mr. Wavell saying, hey, there's a reason to think these guidelines are improperly calculated, that the district court perhaps has an obligation to pry into that a little bit more than otherwise. I'll turn briefly to our second argument, which is the failure to address a non-frivolous mitigation argument. Mr. Wavell filed a lengthy pro se sentencing memorandum prior to sentencing and then also had a lengthy elocution during sentencing where he related to the district court an incident that happened at the regional jail after the first night of trial where he was assaulted by guards at the regional jail. He was denied some medical attention that he needed. And he put that in his sentencing memorandum as one of the bases on which he should receive a downward variance. The district court did note the irony of Mr. Wavell talking about essentially being bullied, given his criminal history and some of his conduct in this case. But that is not the same thing as addressing a non-frivolous argument for a reduced sentence. The district court's explanation for its sentence focused on his conduct, lack of remorse, and criminal history. It did specifically note his upbringing, which was part of the same argument that he made. So we know the district court was aware of what was in that pro se sentencing memorandum, but there was no engagement with it. And I don't think this is an error that the government can reveal by saying it's harmless. The sentence that was imposed in this case was an upward variance. The district court did tell Mr. Wavell on a number of occasions, look, I've read everything that you've sent me. Yes, Your Honor, and unlike the objection to the PSR, the district court specifically asked if counsel was adopting. The district court didn't do that with the sentencing memorandum. I think the record shows that he read it, was aware of it, but nonetheless didn't engage with it. And that engagement could have been a rejection, but we don't know that. And so looking at the error to see if it's harmless, this was an upward variance. So there's no presumption of reasonableness of the sentence imposed, and I don't think failing to engage with an argument for a reduced sentence is necessarily a harmless error simply because you otherwise explain why you might have imposed a variance. All right, any further questions? I will wait for my rebuttal. Thank you. All right. Thank you, Mr. Byrne. Mr. Cogar. Thank you, Your Honor. May it please the court, my name is Andrew Cogar. I'm representing the United States in this matter. We would request that the court affirm the district court's judgment on sentencing because it did not commit any error with respect to either the finding as to the underlying conviction from West Virginia from Mr. Wavell or in addressing the mitigating arguments by Mr. Wavell as well. With respect to the first issue, the bottom line, Your Honors, is that this court's precedents and the rules of criminal procedure permit the court to adopt an undisputed PSR finding, and in all events, that finding cannot be clear or obvious error where the underlying record is neither clear nor obvious. Now, the threshold issue that has been presented really more recently in the reply brief and in the supplemental briefing is an issue of burden. Just to make something clear that the government met its burden below at the sentencing level, in acknowledging the application of the plain error standard review in its opening brief, counsel effectively conceded the failure to objectively object to the disputed PSR finding, citing the Lawson case, which indicated that a party must alert the court to a specific reason for the objection, and that's why we have plain error review right now. I think it's still conceded. And in any event, there's – What about this court's decision in Henderson and the independent obligation of the district court to confirm the guidelines range? Because here, I think had the district court done so, it would have either determined that the conviction was under the general attempt statute and therefore didn't apply, or it was under the uniform controlled substances statute, and then would have had to then engage in legal analysis under Campbell to determine if it qualified. So, neither – none of that happened. That's correct, Your Honor. Henderson states a basic principle of the court's obligation to do the independent review, but factually it's an opposite. Henderson involves a situation where what was under review by this court was the district court's allowance of the government to file objections outside of the normal time to file objections. That didn't happen here. There's no dispute that there was never an attempt, much less a fulfilled attempt, to object to the issue that's before this court now. So, really, on its facts, Henderson is not applicable. We absolutely agree that the court has an independent obligation to correctly calculate the guidelines. But on the other hand, Your Honor, the defendant has an obligation to present in specific and direct terms an objection to the court to highlight for the court that there's an issue with his conviction. And as the court recognized in Fowler – So, you don't think that his pro se objections that he did not withdraw count here? No, Your Honor, in as much as they don't specifically articulate the reasons that are before this court now as to why that conviction shouldn't be counted. The court's precedent is clear on this, that the defendant has an obligation to highlight the reasons why the conviction shouldn't be counted. And as it relates to the issue of whether or not it's a controlled substance offense under the guidelines, I don't believe there's a dispute here that the defendant failed to do that. So – It's clear to me that it's the same statute as in Campbell, and there was no analysis as to whether it qualified. Now, you know, we could find that it's – if we did the analysis ourselves, that it's divisible and that it does qualify. But it is odd to me that the district court didn't do that analysis. It's the exact same statute. I would think that post-Campbell, every time that statute is the basis, it would be analyzed to see whether it was – it qualified. Well, Your Honor, I understand that. But in my experience in the district courts here, unless the party objects, that's often not going to get raised, especially when you have, in this case, a manufacturing charge. And so I can only assume, Judge, I don't – it was never raised, so I can't say for certain. But I can only assume, Judge, that the district court recognized implicitly that a manufacturing or cultivating charge, as it was characterized in the PSR, is distinguishable from the delivery offense that was at issue in Campbell. So in any event, Your Honors, Mr. Wavell did not properly object below. And as I indicated in the Fowler case, there's an affirmative duty for the defendant to do that, to specifically challenge the reliability and accuracy of the facts in the PSR. That's particularly of importance when it comes to convictions, as Fowler also noted, that the defendant himself is in the best position. Not his attorney, because he wasn't – the defense attorney from 2022 or 2023 probably would not be aware of the state conviction from 2007, nor necessarily even have access to the records. So – and nor would the government, and nor would the court. The probation officer certainly had access to some of those records, as reflected in the PSR. But in all events, the defendant is in the best position to raise this issue, and he failed to do so. And he can't now try to bootstrap his other objections, which don't directly address that issue. So consequently, in light of the failure of the defendant to properly object, the government's met its burden. And the court under Fowler is permitted to adopt the PSR and under the rules of procedure. Now, the adoption of the unchallenged PSR finding, as it relates to that state conviction, generally will satisfy the plain error standard under the recent case law that we briefed in our supplemental briefing. Both the Fowler, Hoover, and Carriopo cases all indicate that when parties fail to object to a PSR finding, court adoption of that finding is generally not going to be error. And that's, again, consistent with Rule 32 of the Rules of Criminal Procedure. The way the courts have analyzed that issue has been in somewhat of a syllogistic way. It's said in Fowler and Hoover and Carriopo, all three, that since there was no objection, then the court did not err in adopting that finding. So as a threshold analysis, there's not error. And that doesn't necessarily end the analysis for this court because, as Fowler did, it undertook a plain error analysis, which is more retrospective, as plain error should be. And even under that more post hoc retrospective analysis, the record supports the court's finding in this case. There was some discussion with my friend about the indictment and what the indictment said as it relates to cultivation of marijuana. If the court were to look to the indictment in the record, which was filed with Mr. Burns' brief, you'll see that the indictment indisputably shows that there was one count charge of manufacturing marijuana. And it explicitly states this is the correct statute in the state code and explicitly states it omits manufacturing. But it also indicates the means by which that offense was committed, which is cultivation of marijuana. And so that's where the PSR finding and that's where the reference to cultivating marijuana comes from. The court records further show, as reflected in the PSR, that the jury in the case tried and convicted Mr. Wabel on that offense of manufacturing marijuana. Now, after that, as the parties have acknowledged and as the court has recognized already, Judge Benjamin, Judge Agee, I believe, specifically, that the record is undeniably confusing in some respects. Counsel has conceded that. Counsel has conceded that it's ambiguous, at least, and unclear in certain respects, especially when it comes to the sentencing orders. And there's some contradictions and counterintuitive findings, to be sure. And so, consequently, we're left to speculate as to what happened in the state court proceeding and why some of that occurred. But that speculation in itself, that lack of clarity in itself, precludes any finding of plain error because it certainly cannot establish that it was clear and obvious. And as the court, and as Judge Agee reflected, with the attempt conviction, insofar as he was convicted or sentenced on attempt, which, again, the records, in one respect, suggest, but is not clear, it's also contradictory because the sentence that he received in the underlying state case was not the lawfully allowed sentence for felony attempt, which could be no more than one to three years as opposed to the one to five year sentence that he was imposed. So, in all events, even if this court were to find that there was plain error, and I would suggest that there's no basis to do so in this case, it would have necessarily been harmless error because the court made very clear that the guideline range was inadequate to address, and this is a quote, to address the seriousness of the offense conduct and Wable's lifelong violent criminal history, the court made a very clear record that the guidelines were insufficient. And even the guideline that would have been higher than what the guideline Wable would now essentially argue for had the state conviction not been counted. So, having said that, I'll move on to the second issue with respect to the mitigating argument and the court's addressing that argument. As to that issue, Your Honors, the totality of the court's sentencing rationale clearly demonstrated that the court rejected Mr. Wable's mitigating argument. This court has never held that in every case, irrespective of the circumstances, each mitigating argument must be explicitly addressed. In the Powers case, which is cited in the government's brief, the court makes a really helpful observation in saying that appellate review is not a game of gotcha, where we tally up the number of distinguishable arguments that a defendant mentions before the district court and then comb the sentencing transcript to match up each argument with the court's sentencing rationale. Context matters, and here the context clearly shows that the district court considered and rejected the mitigating arguments and engaged in a very thorough 355-3A analysis. Now, in his brief, and to some extent as alluded in his opening argument, Mr. Wable, through Mr. Byrne, is relying on the line of cases from Blue, and understandably so. Blue is a seminal decision when it comes to addressing non-frivolous arguments by the defense. The Blue court found importantly, though, Blue is distinguishable, and the reliance on Blue in those line of cases are misplaced because, first of all, in Blue, the court found that the district court did not explain the 355-3A factors or their principles, or how their principles shaped the sentencing decision. Here, by contrast, there was a fulsome analysis of the relevant sentencing factors, focusing on the circumstances of the offense, which were created, as the court found, an extraordinarily dangerous situation for the probation officers, and also involved tampering with witnesses and suborning perjury before the district court. The court also paid much attention to the defendant's lengthy criminal history, which include significant violent crimes and unscored violent crimes, including a murder. The court spoke to the defendant's recidivism in that respect, and also lack of remorse. So, in contrast, again, back to Blue, Blue, in Blue, the lower court record, provided insufficient context to provide any meaningful appellate review, and if the court, and I would venture, is because Blue is such a significant case, I look back at the joint appendix of that case, and the sentencing rationale in Blue, in the transcript, literally encompasses a paragraph. It's a paragraph long. Here, the district court's rationale encompassed six pages of the transcript. And on a similar token, the cases that are cited by Mr. Byrne in his opening brief for this proposition that the district court must understandably respond to non-frivolous arguments by the defendant for mitigation and variance, all those cases, Ross, Lewis, Torres, Reyes, they all had this similar cursory explanation and rationales that were provided, which the court found insufficient, and also indicated that they provided no basis for meaningful appellate review. Here, though, we don't have that. The district court necessarily rejected the argument of alleged pretrial abuse as incredible and unsupported. It's important to remember the context here. You have a defendant who committed a fraud upon the court, as the district court explicitly found with respect to his suborning of perjury. As Judge Agee noted, the district court repeatedly acknowledged that he read the defendant's pro se memo and filings. And the district court also unequivocally stated that the argument for downward variance lacked evidentiary support. And, in fact, it did lack evidentiary support, even with respect to the singular claim as to pretrial abuse. It was a mere allegation. There was no corroboration of it. There was a claim in his pro se memorandum that he had submitted some kind of a complaint to the U.S. Marshals or to the regional jail, but that complaint was never provided as part of the record. And we're also left to speculate about the possibility that maybe if, in fact, it did happen that a regional jail correctional officer sprayed him with pepper spray or something like it, it could have been provoked. We don't know because there's no evidence of that. The court otherwise, again, had no reason to take the defendant's argument seriously because of his deception and blame shifting. In the case and also in his allocution, the court explicitly found that Wabel attempted to commit a fraud on the court and on the justice system. And the court also dismissively noted that Wabel portrayed himself as a lifetime of being a victim, which necessarily would have encompassed this jail abuse claim as well. So, having said all that, Your Honors, the district court engaged in a thorough 355-3A analysis. It made a direct and contextual both rejection of any mitigating arguments the defendant offered and also provided an ample record for this court to conduct a meaningful appellate review. And for those reasons, it could not have committed any reasonable or procedural error and based on what I indicated earlier, any such error to the extent that it seemed possible would be harmless. I'll be happy to answer the other questions that Your Honors have. Otherwise, I'll rest with my brief. All right. Thank you, Mr. Cogar. Mr. Byrne, you get the last word. You have some rebuttal time. Thank you, Your Honors. Very briefly, I will start where Mr. Cogar ended. Which is the nature of Mr. Wavell's claim regarding the abuse at the jail. He called it incredible and unsupported. But Mr. Wavell made that claim prior to sentencing. The government never tried to disprove it. The government never produced those U.S. Marshals that he talked to. Who could have said no? He never mentioned this. It is, unfortunately, a fact of life that the West Virginia regional jail system is a mess and frequently has issues with mistreatment of inmates. My office sometimes represents people who are accused of federal crimes because of that. The idea that Mr. Wavell might have been abused during trial is not so out of the realm of possibility that it can just be dismissed out of hand. But we don't even know whether the district court dismissed it out of hand because the district court never addressed it. It's important to keep in mind that there isn't any proof in the record other than Mr. Wavell's ipsodixit here. I mean, he didn't say, you know, look, Judge, here's a bruise I got. Here's a copy of a complaint I made. Here's a letter from another inmate to back me up. I mean, this is just his story. I mean, there's nothing to verify it. Why would the district court be under an obligation to undertake some sort of independent investigation if that's all you got? I think the district court was under an obligation to do an independent investigation, but if the district court wants to reject it on that basis, it should say so. And we don't know that the district court rejected it on that basis. The district court may have rejected it on the basis that this is not a legitimate basis for reducing a sentence under 3553A. And as we said in our brief, there are many courts that have done so. That would be an error that would require a reverse. So I don't think the fact that the district court gave a thorough explanation for the reasons it imposed the sentence it did necessarily precludes the argument that there were other things the district court should have addressed because they might have made a difference. The other thing I just wanted to point out, given my limited time, contrasting this case to Fowler and the other cases that Mr. Koger talked about, there was an objection here. It was pro se. It was not necessarily on point, but there is scads of case law out there about how pro se pleadings are entitled to sort of a benefit of the doubt, not be construed as strictly as counseled pleadings. And again, I think that should have set the court onto trying to figure out, trying to get to the bottom line of that 2007 conviction. If there are no further questions, I will just rest on my briefs and ask that this court vacate Mr. Wavell's sentence and remand for re-sentencing. All right. Thank you, Mr. Byrne. I want to thank both counsel for an excellent argument and we'll take it under advisement. Obviously, we can't come out of the screen and greet you like we would in Richmond, so we look forward to having you all back at some other time. So with that, I'll ask the clerk to adjourn court sine die. This honorable court stands adjourned sine die. God save the United States and this honorable court.
judges: G. Steven Agee, DeAndrea Gist Benjamin, Nicole G. Berner